597 So.2d 823 (1992)
Andre Henry LAMONT, Appellant,
v.
The STATE of Florida, Appellee.
James BROOKS, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 89-2917, 90-1419.
District Court of Appeal of Florida, Third District.
February 18, 1992.
As Clarified April 28, 1992.
*824 Bennett H. Brummer, Public Defender, and Bruce A. Rosenthal and Valerie Jonas, Asst. Public Defenders, for appellants.
Robert A. Butterworth, Atty. Gen., and Katherine B. Johnson, and Roberta G. Mandel, Asst. Attys. Gen., for appellee.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, FERGUSON, JORGENSON, COPE, LEVY, GERSTEN and GODERICH, JJ.
EN BANC
LEVY, Judge.
These cases were set for hearing en banc to determine whether the sentencing provisions of the habitual felony offender statute, Section 775.084, Florida Statutes (1989) [hereafter the "Act"], apply to life felonies. We conclude that the habitual offender statute is applicable to defendants convicted of life felonies and, thus, the defendants in the instant cases were properly sentenced as habitual felony offenders.
James Edwards Brooks and Andre Henry Lamont, the defendants, were both sentenced as habitual felony offenders after being found guilty of life felonies. Defendant Brooks was convicted of second degree murder pursuant to Section 782.04(2), Florida Statutes (1989), a first degree felony, which was reclassified to a life felony, pursuant to Section 775.087, Florida Statutes (1989), because the defendant used a firearm during the commission of the murder.[1] The trial court found the defendant to be a habitual violent felony offender, and sentenced him to life in prison without eligibility for release for fifteen years under Section 775.084(4), Florida Statutes (1989). Brooks was also convicted for improper exhibition of a firearm pursuant to Section 790.10, Florida Statutes (1989), and sentenced to one year to run concurrent with the life sentence.
Defendant Lamont was convicted of sexual battery with a firearm pursuant to Section 794.011(3), Florida Statutes (1989), a life felony; burglary of an occupied dwelling with a firearm pursuant to Section 810.02(2)(b), Florida Statutes (1989), a first-degree felony punishable by a terms of years not exceeding life imprisonment; and kidnapping with a firearm pursuant to Section 787.01(2), Florida Statutes (1989), a first-degree felony, which was reclassified to a life felony under Section 775.087(1)(a), Florida Statutes (1989), because Lamont used a firearm in the commission of the kidnapping.[2] *825 Lamont was sentenced as a habitual felony offender under Section 775.084(4)(a) to life imprisonment on the sexual battery and kidnapping charges, with a fifteen year habitual mandatory minimum and a three-year firearm mandatory minimum on each of those counts. Lamont received a consecutive life sentence with fifteen years mandatory minimum on the armed burglary, assault and battery count. Both defendants argue, inter alia, that the habitual felony offender statute, in its entirety, is inapplicable to life felonies. In essence, they base their argument on the fact that two particular subsections of the Act, to-wit: (4)(a) and (4)(b), fail to make reference to persons convicted of life felonies.
Section 775.084, Florida Statutes (1989), provides for extended prison sentences for convicted felons who have incurred predicate prior felony convictions within prescribed intervals.
A "habitual felony offender" has incurred two or more prior felony convictions, none of which has been pardoned or otherwise set aside, and the last of which was imposed, or resulted in release from prison, within five years of the subject conviction. § 775.084(1)(a), Fla. Stat. (1989). Section 775.084(4)(a) of the Act provides for sentencing the habitual felony offender for the subject conviction, as follows:
1. In the case of a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 30.
3. In the case of a felony of the third degree, for a term of years not exceeding 10.
A "habitual violent felony offender" under the Act has incurred one or more enumerated violent felony convictions, none of which has been pardoned or otherwise set aside, and the last of which was imposed, or resulted in release from prison, within five years of the subject conviction. § 775.084(1)(b), Fla. Stat. (1989). Section 775.084(4)(b) provides for sentencing the habitual violent felony offender as follows:
1. In the case of a felony of the first degree, for life, and such offender shall not be eligible for release for 15 years.
2. In the case of a felony of the second degree, for a term of years not exceeding 30, and such offender shall not be eligible for release for 10 years.
3. In the case of a felony of the third degree, for a term of years not exceeding 10, and such offender shall not be eligible for release for 5 years.
The defendants argue that because these two particular subsections of the Act, (4)(a) and (4)(b), do not specifically provide for enhanced sentencing where the subject conviction is a life felony, the Act, as a whole, does not apply to life felonies. We find this argument unpersuasive for the following reasons.
First, we find the interpretation urged by the defense to be contrary to legislative intent. It is a fundamental principle of statutory construction that statutes will not be interpreted in such a manner as to lead to an unreasonable or ridiculous result or a result obviously not intended by the legislature. Drury v. Harding, 461 So.2d 104 (Fla. 1984); McKibben v. Mallory, 293 So.2d 48 (Fla. 1974); Allied Fidelity Ins. Co. v. State, 415 So.2d 109 (Fla. 3d DCA 1982); Palm Springs General Hospital, Inc. of Hialeah v. State Farm Mutual Automobile Insurance Co., 218 So.2d 793 (Fla. 3d DCA 1969), affirmed, 232 So.2d 737 (Fla. 1970). Sections 775.0841 and 775.0842, Florida Statutes (1989), discuss the intent of the legislature in the prosecution of career criminals. These Sections clearly reflect that the legislature intended persons qualifying as career or habitual criminal offenders to receive enhanced punishment, and provide as follows:
775.0841 Legislative findings and intent.  The Legislature hereby finds that *826 a substantial and disproportionate number of serious crimes is committed in Florida by a relatively small number of multiple and repeat felony offenders, commonly known as career criminals. The Legislature further finds that priority should be given to the investigation, apprehension, and prosecution of career criminals in the use of law enforcement resources and to the incarceration of career criminals in the use of available prison space. The Legislature intends to initiate and support increased efforts by state and local law enforcement agencies and state attorney's offices to investigate, apprehend, and prosecute career criminals and to incarcerate them for extended terms.
775.0842 Persons subject to career criminal prosecution efforts.  A person who is under arrest for the commission, attempted commission, or conspiracy to commit any felony in this state shall be the subject of career criminal prosecution efforts provided that such person qualifies as a habitual felony offender or a habitual violent felony offender under s. 775.084.
It is obvious that the legislature intended that defendants with prior criminal records of habitual crimes receive greater punishment than others. As recognized by the First District in Barber v. State, 564 So.2d 1169, 1171 (Fla. 1st DCA) rev. denied 576 So.2d 284 (Fla. 1990):
The legislature chose to restrict the class of felons encompassed by section 775.084, based upon the number of prior felonies and misdemeanors committed, and based upon the length of time since the defendant committed the last crime. It is apparent that the legislature intended to enact this law in the belief that increased sentences for repeat offenders will deter their criminal conduct, at least during the time that they are incarcerated. There can be no question that enhanced punishment of repeat felons is a legitimate goal within the state's police power.
To follow the defendants' construction of the Act would defeat the expressed legislative intent of providing enhanced penalties for career criminals in order to deter criminal conduct. It is not rational, to say the least, to interpret the statutes so that those career criminals who commit the most serious of felony crimes are not subject to enhanced punishment under the habitual offender statute, while those that commit less serious crimes are included within its scope.
Second, it is significant that the statutory sections under which the defendants were convicted specifically provide for sentencing under the habitual offender statute. Defendant Brooks was convicted of second degree murder with a firearm, under Section 782.04(2), which states that persons convicted under this statute may be punished "as provided in s. 775.082, s. 775.083, or s. 775.084." (Emphasis added). Defendant Lamont was convicted of sexual battery with a firearm, kidnapping with a firearm, and burglary of an occupied dwelling with a firearm. Section 794.011(3), which defines sexual battery with a firearm, Section 810.02(2)(b), Florida Statutes (1989), which defines burglary of an occupied dwelling with a firearm, and Section 787.01(2) which defines kidnapping, all state that persons convicted under the statute may be punished "as provided in s. 775.082, s. 775.083, or s. 775.084. (Emphasis added).[3] The legislature would not have specifically indicated in each statute that Section 775.084 was to be used in determining a defendant's sentence if it *827 had intended to exclude defendants convicted of such felonies from the scope of the Act.[4] The fact that some or all of the underlying crimes are life felonies, either by definition, or by reclassification pursuant to Section 775.087, only means that those individual crimes which are life felonies cannot be affected by the provisions of subsections (4)(a) and (4)(b) of the Act, because those two particular subsections do not provide for the sentencing of life felonies. However, that does not affect the applicability of the remainder of the Act to life felonies. The statutory sections relating to the offenses for which the defendants were convicted refer to Section 775.084 in its entirety. Viewing the Act as a whole, it is clear that persons convicted of life felonies may be sentenced pursuant to other portions of the Act, such as subsection (4)(e).
Subsection (4)(e) of the Act states that:
(e) A sentence imposed under this section shall not be subject to the provisions of s. 921.001. The provisions of chapter 947 shall not be applied to such person. A defendant sentenced under this section shall not be eligible for gain-time granted by the Department of Corrections except that the department may grant up to 20 days of incentive gain-time each month as provided for in s. 944.275(4)(b).
In other words, under the language of Section 775.084(4)(e), once an offender has met the criteria of Section 775.084(1), and has been classified as a habitual offender, such a defendant need not be sentenced within the sentencing guidelines. Accordingly, a person convicted of a life felony (either by definition or by reclassification) can be sentenced to the maximum of life imprisonment. Furthermore, such a defendant would not be eligible for parole.[5]
In order to give effect to legislative intent, and to avoid a construction of the statutory language which would lead to an absurd result, our analysis must focus upon a consideration of the Act as a whole.[6] Accordingly, a far more reasonable construction of the statute which would give effect to the legislative intent of deterring repeat offenders, would be to recognize that extended terms of imprisonment for life felons are authorized under subsection (4)(e) of the statute. Thus, a more accurate analysis of the applicability of the act would be as follows. Once a defendant has been classified as a habitual felony offender, then "the court may impose an extended term of imprisonment as provided in this section... ." § 775.084(1)(b), Fla. Stat. (1989). Referring to subsection (4)(e) "in this section," the court may then sentence life felony defendants to life imprisonment because subsection (4)(e) of the statute removes habitual violent felony offenders from the sentencing guidelines, makes them ineligible for parole and removes their eligibility for gain-time (except that specified).[7]
*828 We recognize that other District Courts of Appeal have held that the Act does not apply to life felonies. In Johnson v. State, 568 So.2d 519 (Fla. 1st DCA 1990), and Walker v. State, 580 So.2d 281 (Fla. 4th DCA 1991), the defendants were convicted of second degree murder, pursuant to Section 784.04(2), Florida Statutes (1989), which was reclassified to a life felony, pursuant to Section 775.087, Florida Statutes (1989), because of the use of a firearm during the commission of each murder. In each of these cases, the trial court found the defendants to be habitual violent felony offenders and sentenced them, pursuant to Section 775.084(4)(b)(1), to life in prison without eligibility for release for fifteen years. The First and Fourth District Courts of Appeal reversed for resentencing stating that: "[T]here is no provision under the habitual violent felony offender statute for enhancing the sentence of a defendant convicted of a life felony," Johnson v. State, 568 So.2d at 520, and "Under the plain language of the statute, only first degree felonies  not those which are already made life felonies  can be enhanced under section 775.084(4)(b)1," Walker v. State, 580 So.2d at 281. See also Graham v. State, 583 So.2d 1107 (Fla. 1st DCA 1991) (holding that Section 775.084 does not apply to sentencing of defendant convicted of life felony); Gholston v. State, 589 So.2d 307 (Fla. 3d DCA 1990) (holding that Section 775.084 does not apply to sentencing of defendant convicted of sexual battery while armed with a deadly weapon, a life felony); Barber v. State, 564 So.2d at 1173 (in rejecting argument that habitual offender statute is unconstitutional, court noted in dictum that statute was not expressly applicable to life felonies). The Fifth District Court of Appeal in Power v. State, 568 So.2d 511 (Fla.App. 5th DCA 1990), and the Second District Court of Appeal in McKinney v. State, 585 So.2d 318 (Fla. 2d DCA 1991) have similarly stated that life felony sentences are not subject to habitual offender enhancement. See also White v. State, 589 So.2d 1014 (Fla. 2d DCA 1991) (holding that trial court could not sentence defendant as habitual violent felony offender because defendant's second-degree murder conviction was reclassified to a life felony); Paige v. State, 570 So.2d 1108 (Fla. 5th DCA 1990) (noting in dictum that the habitual offender statute is inapplicable to life felonies). However, each of these decisions appear to have focused exclusively on subsections (4)(a) and (4)(b)  the portions of the statute which increase the possible sentence for specified degrees of crimes. None of the opinions rendered by the other District Courts of Appeal addressed the Act in its entirety or specifically discussed the applicability of subsection (4)(e) of the Act.
*829 For the reasons discussed above, we find that a more reasonable construction of the statute, in accordance with legislative intent, supports our holding that life felonies are subject to the provisions of the habitual offender act, specifically including Section 775.084(4)(e), and accordingly affirm the sentencing of the life felony defendants as habitual offenders.[8] Although we agree with the above cited cases from the First, Fourth, and Fifth District Courts of Appeal holding that subsections 775.084(4)(a) and (b) do not apply to persons convicted of life felonies, the result we reach herein is different than that reached by the other District Courts of Appeal due to the fact that we find that the remaining portions of Section 775.084, specifically including subsection 775.084(4)(e), do apply to persons convicted of life felonies. To that extent, we certify the conflict that apparently exists between the result reached herein and the results reached by the other District Courts of Appeal.
As to defendant Lamont's conviction for burglary of an occupied dwelling with a firearm, a first-degree felony punishable by a terms of years not exceeding life imprisonment, the trial court correctly sentenced the defendant to life imprisonment under the habitual offender statute in accordance with the Florida Supreme Court's recent holding in Burdick v. State, 594 So.2d 267 (Fla. 1992), and this Court's holdings in Westbrook v. State, 574 So.2d 1187 (Fla. 3d DCA 1991) and Henry v. State, 576 So.2d 409 (Fla. 3d DCA 1991). Thus, as to that offense, we note an alternative basis for affirming our finding that the habitual offender statute was properly applied to Lamont. However, we reverse and vacate that part of defendant Lamont's sentence containing the provision that he serve a minimum mandatory of 15 years. The trial court incorrectly ascribed its authority as to the 15 year minimum to the provisions of Section 775.084(4)(a) and Section 775.082(1), neither of which are applicable to the offense for which Lamont was convicted.
As to defendant Brooks, we find the trial court erred in convicting and sentencing Brooks for improper exhibition of a firearm, in addition to convicting and sentencing him for the second degree murder which involved his possession and use of the same firearm. Dual convictions and sentences for murder with a firearm and improper exhibition of the same firearm are violative of the double jeopardy clause of the state and federal constitutions. Cleveland v. State, 587 So.2d 1145 (Fla. 1991); Dixon v. State, 546 So.2d 1194 (Fla. 3d DCA 1989), approved, 558 So.2d 1001 (Fla. 1990); Evans v. State, 528 So.2d 125 (Fla. 3d DCA 1988), appeal after remand 545 So.2d 452 (Fla. 3d DCA), review denied 554 So.2d 1167 (Fla. 1989).
In conclusion, both the finding by the trial court that Brooks and Lamont are habitual felony offenders, as provided for in Section 775.084, Florida Statutes (1989), and the subsequent sentencing of the defendants thereunder are affirmed. Other than subsections (4)(a) and (b), all portions of Section 775.084, specifically including subsection (4)(e), fully apply to each of these defendants. Accordingly, each of the defendants were properly sentenced to life imprisonment and neither of them shall be eligible for consideration for parole. The portion of each defendant's sentence that requires that they serve fifteen (15) years before being eligible for release, purportedly pursuant to subsection (4)(a) and/or (4)(b), is vacated since such language is both without statutory basis and, in view of the foregoing, moot. Lastly, as previously discussed, Brooks' conviction and sentence for improper exhibition of a firearm is vacated.
We find that appellant's remaining points lack merit. Affirmed in part and reversed in part.
*830 SCHWARTZ, C.J., and BARKDULL, NESBITT, JORGENSON, COPE and GERSTEN, JJ., concur.
HUBBART, Judge (dissenting).
I must respectfully dissent. I would reverse the life sentences, together with the fifteen-year mandatory minimum terms, which were imposed below as habitual violent felony offender sentences under Section 775.084(4)(b), Florida Statutes (1989), (1) on the defendant James Edward Brooks for the reclassified life felony of second-degree murder with a firearm, §§ 782.04(2), 775.087(1)(a), Fla. Stat. (1989), and (2) on the defendant Andre Henry Lamont for (a) the life felony of sexual battery with a deadly weapon, § 794.011(3), Fla. Stat. (1989), and (b) the reclassified life felony of kidnapping with a firearm §§ 787.01(2), 775.087(1)(a), Fla. Stat. (1989)  and remand the cause to the trial court with directions to resentence the above defendants pursuant to the sentencing guidelines.

I
I would reach this result because, simply stated, the Habitual Offender Act [§ 775.084, Fla. Stat. (1989)] by its plain terms contains no extended term of imprisonment for a life felony conviction  and consequently, a defendant who is convicted of a life felony, as here, must be sentenced under the sentencing guidelines. §§ 921.001(4)(a); 921.005, Fla. Stat. (1989); Fla. R.Crim.P. 3.701, 3.988. Section 775.084(4)(a), (b), Florida Statutes (1989), sets out in its entirety the extended terms of imprisonment for a defendant who qualifies as an habitual felony offender [§ 775.084(1)(a), Fla. Stat. (1989)] or an habitual violent felony offender [§ 775.084(1)(b), Fla. Stat. (1989)]:
"(4)(a) The court, in conformity with the procedure established in subsection (3), shall sentence the habitual felony offender as follows:
1. In the case of a felony of the first degree, for life.
2. In the case of a felony of the second degree, for a term of years not exceeding 30.
3. In the case of a felony of the third degree, for a term of years not exceeding 10.
(b) The court, in conformity with the procedure established in subsection (3), may sentence the habitual violent felony offender as follows:
1. In the case of a felony of the first degree, for life, and such offender shall not be eligible for release for 15 years.
2. In the case of a felony of the second degree, for a term of years not exceeding 30, and such offender shall not be eligible for release for 10 years.
3. In the case of a felony of the third degree, for a term of years not exceeding 10, and such offender shall not be eligible for release for 5 years."
Plainly, the statute contains no extended term of imprisonment for a defendant who is convicted, as here, of a life felony. Indeed, the sentences imposed in the case at bar  life imprisonment with no eligibility for release for fifteen years  represent the extended term of imprisonment for an habitual violent felony offender who has been convicted of a felony in the first degree, not a life felony. § 775.084(4)(b)(1), Fla. Stat. (1989). This being so, it is clear that the above sentences under review must be reversed and the cause remanded for resentencing under the sentencing guidelines; this result is in full accord with the decisions of the First, Second, Fourth, and Fifth District Courts of Appeal which, when presented with the same issue, have come to precisely the same conclusion.[1]

II
I think today's contrary decision  which puts us in conflict with every district court *831 in the state on this issue  represents a classic example of judicial legislation which we have no authority to accomplish. Under the guise of statutory interpretation, the court has simply rewritten the Habitual Offender Act so as to provide an extended term of life imprisonment with no parole for an habitual violent felony offender who is convicted, as here, of a life felony. The court purports to find this extended term of imprisonment in Section 775.084(4)(e), Florida Statutes (1989), which provides as follows:
"(e) A sentence imposed under this section shall not be subject to the provisions of s. 921.001. The provisions of chapter 947 shall not be applied to such person. A defendant sentenced under this section shall not be eligible for gain-time granted by the Department of Corrections except that the department may grant up to 20 days of incentive gain-time each month as provided for in s. 944.275(4)(b)."
Obviously, this subsection contains no extended term of imprisonment for a life felony conviction or, for that matter, any other felony conviction; it provides only that as to sentences imposed under the Habitual Offender Act [which are exclusively found in Section 775.084(4)(a), (b)], the sentencing guidelines [s. 921.001], probation and parole [ch. 947], and gain time [except for s. 944.275(4)(b)] are inapplicable. To find in this subsection an extended term of imprisonment for an habitual violent felony offender who is convicted of a life felony, as the court has done, is to find something which simply is not there.
Although legislative intent is the polestar by which the court must be guided when interpreting a statute,[2] where the language of a statute is clear and unequivocal, as here, legislative intent may be gleaned from the words of the statute, and the court's duty is to give effect to the plain and unambiguous language of the statute without resorting to rules of construction.[3] Clearly, this court has no authority under the guise of statutory construction to amend a statute, as here, in order to accomplish a desirable policy goal or avoid untoward consequences,[4] as, without question, the judiciary "cannot rewrite legislative acts." Burdick v. State, 594 So.2d 267, 269 (Fla. 1992); opinion filed February 6, 1992 [17 F.L.W. S88]. Moreover, it is well settled that a penal statute, as here, must be strictly construed according to its literal terms in a manner most favorable to the accused and cannot be extended in scope beyond that. As the Florida Supreme Court has recently stated:
"One of the most fundamental principles of Florida law is that penal statutes must be strictly construed according to their letter. E.g., State v. Jackson, 526 So.2d 58 (Fla. 1988); State ex rel. Cherry v. Davidson, 103 Fla. 954, 139 So. 177 (1931); Ex parte Bailey, 39 Fla. 734, 23 So. 552 (1897). This principle ultimately rests on the due process requirement that criminal statutes must say with some precision exactly what is prohibited. E.g., Brown v. State, 358 So.2d 16 (Fla. 1978); Franklin v. State, 257 So.2d 21 (Fla. 1971); State v. Moo Young, 566 So.2d 1380 (Fla. 1st DCA 1990). Words and meanings beyond the literal language may not be entertained nor may vagueness become a reason for broadening a penal statute.

Indeed, our system of jurisprudence is founded on a belief that everyone must be given sufficient notice of those matters that may result in a deprivation of life, liberty, or property. Scull v. State, 569 So.2d 1251 (Fla. 1990) (on petition for clarification); Franklin, 257 So.2d at 23. For this reason,

*832 [a] penal statute must be written in language sufficiently definite, when measured by common understanding and practice, to apprise ordinary persons of common intelligence of what conduct will render them liable to be prosecuted for its violation.

Gluesenkamp v. State, 391 So.2d 192, 198 (Fla. 1980), cert. denied, 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981) (citations omitted). Elsewhere, we have said that
[s]tatutes criminal in character must be strictly construed. In its application to penal and criminal statutes, the due process requirement of definiteness is of especial importance.

State ex rel. Lee v. Buchanan, 191 So.2d 33, 36 (Fla. 1966) (citations omitted); accord State v. Valentin, 105 N.J. 14, 519 A.2d 322 (1987). Thus, to the extent that definiteness is lacking, a statute must be construed in the manner most favorable to the accused. Palmer v. State, 438 So.2d 1, 3 (Fla. 1983); Ferguson v. State, 377 So.2d 709 (Fla. 1979).
The rule of strict construction also rests on the doctrine that the power to create crimes and punishments in derogation of the common law inheres solely in the democratic processes of the legislative branch. Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982); accord United States v. L. Cohen Grocery Co., 255 U.S. 81, 87-93, 41 S.Ct. 298, 299-301, 65 L.Ed. 516 (1921) (applying same principle to Congressional authority). As we have stated,
The Florida Constitution requires a certain precision defined by the legislature, not legislation articulated by the judiciary. See Article II, Section 3, Florida Constitution.

Brown, 358 So.2d at 20; accord Palmer, 438 So.2d at 3. This principle can be honored only if criminal statutes are applied in their strict sense, not if the courts use some minor vagueness to extend the statutes' breadth beyond the strict language approved by the legislature. To do otherwise would violate the separation of powers. Art. II, § 3, Fla. Const."
Perkins v. State, 576 So.2d 1310, 1312-13 (Fla. 1991) (emphasis added) (footnote omitted). The court's holding today, which broadens the scope of the Habitual Offender Act beyond its strict terms, does obvious violence to the above rules of statutory construction; clearly, the court has liberally [rather than strictly] construed a penal statute beyond its express terms in a manner most favorable to the state [rather than the defendant] and in the process has engaged in impermissible judicial legislation.
One final point. The court relies, in part, on language which is found in all Florida statutes proscribing felonies [including the felony statutes involved in this case], namely, that a violation of a felony statute inter alia is "punishable ... as provided in s. 775.082, s. 775.083, or s. 775.084." (emphasis added). One must consult each of these referenced statutes, however, to determine the nature of the punishment prescribed; if no such punishment is provided by one or more of these statutes, as here, obviously no penalty can be imposed thereunder.
For the above-stated reasons, then, I would reverse the life sentences, which were imposed below under the Habitual Offender Act for life felony convictions, and remand for resentencing under the sentencing guidelines.
BASKIN, FERGUSON and GODERICH, JJ., concur.
NOTES
[1] The facts surrounding the arrest and conviction of defendant Brooks are as follows. James Brooks shot and killed one Leon Ned at approximately 3:00 a.m. outside a local bar. Brooks defense at trial was that the shooting was an accident induced through voluntary intoxication. Brooks had been heavily drinking, and was walking in front of the bar, when he stumbled and fell onto the hood of Ned's car. Ned got out of the car and the two men began to fight. Ned then grabbed a black jack and repeatedly struck Brooks. The two were separated, and Brooks went to the bar. Shortly thereafter, Brooks returned to the car with a gun and shot Ned. According to Brooks, he only wanted to frighten Ned with the gun; however, he was dazed from the liquor and wounds to his head, and stumbled, accidently striking the roof of the car and causing the gun to discharge.
[2] The facts surrounding defendant Lamont's arrest and conviction are as follows. Lamont entered the home of the female victim early one morning carrying a handgun. He then committed a non-consensual sexual battery on the victim after directing her into her bedroom. After the sexual battery, Lamont directed the victim and her four year old son at gunpoint to go into the bathroom and remain there, or they would be harmed.
[3] Section 794.011(3) states specifically that: "A person who commits sexual battery upon a person 12 years of age or older, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon ... is guilty of a life felony, punishable as provided in s. 775.082, s. 775.083 or 775.084." (Emphasis added). Section 810.02 reads in pertinent part: "Burglary is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083 or s. 775.084 if, in the course of committing the offense, the offender: ... (b) is armed... ." (Emphasis added). And, Section 787.01(2) states in pertinent part: "A person who kidnaps a person is guilty of a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084." (Emphasis added).
[4] Moreover, the sexual battery statute under which defendant Lamont was convicted, Section 794.011(3), specifically refers to a life felony conviction as being subject to the penalty provisions of Section 775.084. The sexual battery statute states, in pertinent part, that: "A person who commits sexual battery ... is guilty of a life felony, punishable as provided in s. 775.082, s. 775.083, or s. 775.084." (Emphasis added.) It is evident from this statutory language that the legislature did in fact intend for the habitual offender statute to apply to life felonies.
[5] The fact that life felonies are not provided for as a specific category in subsections (4)(a) and (4)(b) of the Act is not illogical or a "legislative oversight" as urged by the defendants, because the maximum enhancement possible for habitual offenders  life imprisonment with no parole  as clearly provided for in (4)(e), makes it unnecessary to provide for further enhancement in the other subsections.
[6] The Florida Supreme Court in State v. Webb, 398 So.2d 820 (Fla. 1981) noted that a fundamental rule of statutory construction in giving effect to legislative intent is to focus upon the statute as a whole. The court stated specifically that:

To determine legislative intent, we must consider the act as a whole  "the evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject."
State v. Webb, 398 So.2d at 824 (quoting Foley v. State, 50 So.2d 179, 184 (Fla. 1951) (emphasis omitted).
[7] In the recent case of Westbrook v. State, 574 So.2d 1187 (Fla. 3d DCA 1991), this Court held that the defendant, who was convicted of robbery with a deadly weapon, a first degree felony punishable by life imprisonment, was properly sentenced to life imprisonment pursuant to the habitual felony offender statute because the robbery statute under which the defendant was convicted permits, on its face, sentencing pursuant to the habitual felony offender statute. We also recognized removal of the habitual offender statute from the sentencing guidelines in order to impose enhanced penalties. As we stated in Westbrook, 574 So.2d at 1188:

First, the robbery statute on its face permits sentencing under the habitual offender statute. Even though conviction under section 812.13(2)(a) is a first-degree felony punishable by life imprisonment, the trial judge is required to enter a guidelines sentence. In defendant's case, his guidelines scoresheet total provided for a recommended sentence of twelve to seventeen years, not life imprisonment. The defendant's highest permitted sentence under the guidelines, without the necessity of written reasons for departure, would have been twenty-two years imprisonment with a one-cell upward departure. However, because the robbery statute permits sentencing under the habitual offender statute where applicable, the trial judge, upon finding the defendant recidivist, was permitted to impose the enhanced life sentence.
Secondly, the statement in Barber, 564 So.2d at 1173, concerning the possible nonapplicability of the habitual offender statute to those convicted of a first degree life felony is purely dicta. Moreover, Barber is not controlling here since the habitual offender statute addressed in that case was the 1987 version which was substantially rewritten by the Florida Legislature ... to take penalties prescribed under the habitual offender statute outside the province of the sentencing guidelines and to allow the trial court to impose the penalty of life imprisonment on a defendant by simply making a determination that the defendant fit the statutory definition of a habitual felony offender. See Owens v. State, 560 So.2d 1260 (Fla. 1st DCA 1990).
See also Ch. 88-131, § 6, Laws of Fla.
[8] In affirming the defendants' sentences, we note that the trial courts apparently attempted to apply 4(a) and 4(b), but neither of these subsections contain any provisions relating to life felonies. Thus, technically the sentencing order is incorrect. However, because we find 4(e) applies, the judge was permitted to give the defendants life imprisonment without the benefit of parole.
[1] FIRST DISTRICT: Gholston v. State, 589 So.2d 307 (Fla. 1st DCA 1991); Johnson v. State, 568 So.2d 519 (Fla. 1st DCA 1990); Barber v. State, 564 So.2d 1169 (Fla. 1st DCA), rev. denied, 576 So.2d 284 (Fla. 1990); SECOND DISTRICT: Ledesma v. State, 528 So.2d 470 (Fla. 2d DCA 1988); FOURTH DISTRICT: Newton v. State, 581 So.2d 212 (Fla. 4th DCA), juris. accepted, 589 So.2d 291, and 292 (Fla. 1991); Walker v. State, 580 So.2d 281 (Fla. 4th DCA), juris. accepted, 589 So.2d 292 (Fla. 1991); FIFTH DISTRICT: Power v. State, 568 So.2d 511 (Fla. 5th DCA 1990).
[2] Parker v. State, 406 So.2d 1089 (Fla. 1981).
[3] St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071 (Fla. 1982); Reino v. State, 352 So.2d 853 (Fla. 1977); Thayer v. State, 335 So.2d 815 (Fla. 1976); Foley v. State ex rel. Gordon, 50 So.2d 179 (Fla. 1951); Ross v. Gore, 48 So.2d 412 (Fla. 1950); Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313 (1940) (en banc); State ex rel. Grodin v. Barns, 119 Fla. 405, 161 So. 568 (1935); Taylor v. State, 117 Fla. 706, 158 So. 437 (1934); Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918).
[4] Graham v. State, 472 So.2d 464 (Fla. 1985); McDonald v. Roland, 65 So.2d 12 (Fla. 1953); Barns, 119 Fla. at 419, 161 So. at 573; Fine v. Moran, 74 Fla. 417, 77 So. 533 (1917).