BARFIELD, Judge.
Sylvester O’Neal Lee appeals his sentences for kidnapping with a firearm and robbery with a firearm (first degree felonies punishable by life) and sexual battery with a firearm (a life felony). He contends the judge erred in departing from the guidelines, and also in sentencing him as an habitual offender, arguing that first degree felonies punishable by life and life felonies are not subject to enhancement pursuant to section 775.084, Florida Statutes (1983). We affirm in part and reverse in part.
The charged crimes occurred in Panama City during the early morning hours of December 15,1983. Lee was convicted and sentenced in 1986 to consecutive life terms, a departure from the recommended sentence of life, based on his habitual offender status. The convictions were reversed in Lee v. State, 508 So.2d 1300 (Fla. 1st DCA 1987), approved, State v. Lee, 531 So.2d 133 (Fla.1988) (Lee I), because of the erroneous admission of collateral crime evidence (a bank robbery in Tallahassee the following afternoon).
On retrial, Lee was again convicted and sentenced to consecutive life terms, the reasons for departure his “continuing and persistent pattern of criminal activity” and the timing of the offenses in relation to his release from incarceration. The convictions were reversed in Lee v. State, 566 *1223 So.2d 264 (Fla. 1st DCA), rev. den., State v. Lee, 576 So.2d 291 (Fla.1990) (Lee II), because the trial court had allowed the state to present evidence of the armed bank robbery during rebuttal to impeach Lee’s testimony that he did not have possession of a pistol at any time on December 15, 1983. Lee had also challenged the trial court’s imposing a sentence pursuant to the sentencing guidelines and utilizing new reasons for departure on resentencing. This court found that since the ruling on the evidentiary question necessitated a new trial, it did not need to reach the two sentencing issues.
After a third trial, Lee was again convicted and found to be an habitual felony offender. He elected to be sentenced under the guidelines, which recommended a life sentence. He received three consecutive life sentences, consecutive to prior sentences. The reason given for departure was the fact that, subsequent to commission of the instant offenses, Lee was convicted of five counts of “Armed Robbery with a firearm — a first degree felony punishable by life imprisonment — in Leon County, Florida” and that these offenses were committed after the instant offenses, but were disposed of previously, and “are not scoreable on the guidelines scoresheet in this case.”
Lee argues on appeal that the departure sentence was improper because when he was originally sentenced, the only reason for departure was his habitual offender status (an improper reason for departure), citing Shull v. Dugger, 515 So.2d 748 (Fla.1987),[1] and because even if the unscored convictions had been scored, he would still have fallen into the “life” cell, citing Puffinberger v. State, 581 So.2d 897 (Fla.1991), and Crocker v. State, 581 So.2d 580 (Fla.1991).[2]
He also contends that first degree felonies punishable by life and life felonies are not subject -to enhancement under section 775.084, Florida Statutes (1983), citing Barber v. State, 564 So.2d 1169 (Fla. 1st DCA), rev. den., 576 So.2d 284 (Fla.1990),[3] construing the 1987 version of 775.084, which he asserts is “virtually identical.”
The state contends that Shull is inapplicable because Shull had successfully appealed his sentence, whereas Lee succeeded in having his convictions overturned. It notes that this court refused to address the alleged sentencing errors in Lee II and asserts that this is the first time Lee has been sentenced for his current, valid convictions. It argues that departure based on subsequent offenses is valid, and that under section 921.001(5), the extent of departure is not subject to appellate review. It contends that Lee’s reliance on Puffin-berger is misplaced because that case specifically dealt with unscored juvenile offenses, and does not stand for the broader proposition that all departures based on non-scoreable offenses must be within the resulting recommended range if they had been scored.
The state points out that a total score of 583 results in a recommendation of life *1224 imprisonment (the highest cell), that Lee scored 944 without the five unscored offenses, and that if these offenses had been scored, he would have scored 2127, but still with the same recommendation of life imprisonment. It asserts that if this court finds that the extent of departure here can be limited, Lee will have benefitted twice from the fact that the convictions for the five subsequently-committed Leon County offenses were entered prior to the sentencing for the instant offenses: because the trial court will be precluded from departing at all in the instant case, and because in sentencing for the Leon County offenses, that trial court could not consider the instant offenses as “prior record.”
Regarding the habitual offender sentence for the first degree felonies punishable by life (kidnapping and robbery), the state cites Burdick v. State, 584 So.2d 1035 (Fla. 1st DCA 1991) (en banc),[4] noting that the pertinent part of the 1983 statute is “virtually identical” to the version construed in Burdick.
As for the habitual offender sentence for the life felony (sexual battery), the state acknowledges that this court held in Johnson v. State, 568 So.2d 519 (Fla. 1st DCA 1990),[5] and in Gholston v. State, 589 So.2d 307 (Fla. 1st DCA 1990), approved, 17 F.L.W. S554, 1992 WL 171250 (Fla. July 23, 1992),[6] that life felonies are not subject to the habitual offender statute. However, it asserts that the judge properly sentenced Lee as an habitual offender for sexual battery with a firearm because section 794.-011(3), under which he was convicted, provides that this offense is punishable under section 775.084, citing Watson v. State, 504 So.2d 1267 (Fla. 1st DCA 1986), rev. den., 506 So.2d 1043 (Fla.1987).
Watson, who had been convicted of sexual battery with great force (a life felony) had argued that section 775.084, Florida Statutes (1983), “only provides for enhancement of first, second and third degree felonies and therefore it is inapplicable to a defendant, such as Watson, who is convicted of a life felony.” This court found that argument to be “without merit,” pointing out that the statute under which Watson was sentenced, section 794.011(3), provides that the crime of sexual battery with great force is a life felony punishable as provided in sections 775.082, 775.083, and 775.084, and that section 775.084 is the habitual offender statute.[7]
*1225 The supreme court very recently held in Burdick v. State, 594 So.2d 267 (Fla.1992), that first degree felonies punishable by life are subject to enhancement under the habitual felony offender statute. It did not rule in that opinion on the applicability of section 775.084 to life felonies, and there was no discussion of Watson, nor of Judge Ervin’s dissent in Burdick. The Third District Court of Appeal, however, has issued an en banc opinion which deals with this question in some detail.
In Lamont v. State, 597 So.2d 823 (Fla. 3d DCA 1992), a majority of the court, sitting en banc, rejected the defendants’ argument that because sections 775.-084(4)(a) and (4)(b) do not specifically provide for enhanced sentencing where the subject conviction is a life felony, the Act as a whole does not apply to life felonies. The court found this argument unpersuasive for two reasons: because this interpretation is contrary to legislative intent as expressed in sections 775.0841 and 775.0842 (“It is not rational, to say the least, to interpret the statutes so that those career criminals who commit the most serious of felony crimes are not subject to enhanced punishment under the habitual offender statute, while those that (sic) commit less serious crimes are included within its scope”), and because the statutory sections under which the defendants were convicted specifically provide for sentencing under the habitual offender statute (“The legislature would not have specifically indicated in each statute that Section 775.084 was to be used in determining a defendant’s sentence if it had intended to exclude defendants convicted of such felonies from the scope of the Act”). The court opined:
[Tjhose individual crimes which are life felonies cannot be affected by subsections (4)(a) and (4)(b) of the Act because those two particular subsections do not provide for the sentencing of life felonies. However, that does not affect the applicability of the remainder of the Act to life felonies. The statutory sections refer to Section 775.084 in its entirety. Viewing the Act as a whole, it is clear that persons convicted of life felonies may be sentenced pursuant to other portions of the Act, such as subsection (4)(e).
[text of statute omitted] In other words, under the language of Section 775.084(4)(e), once an offender has met the criteria of Section 775.084(1), and has been classified as a habitual offender, such a defendant need not be sentenced within the sentencing guidelines. Accordingly, a person convicted of a life felony (either by definition or by reclassification) can be sentenced to the maximum of life imprisonment. Furthermore, such a defendant would not be eligible for parole.
Id. at 827. In a footnote, the court found that the fact that life felonies are not a specific category in subsections (4)(a) and (4)(b) is neither illogical nor a “legislative oversight” as urged by the defendants, “because the maximum enhancement possible for habitual offenders — life imprisonment with no parole — as clearly provided for in (4)(e), makes it unnecessary to provide for further enhancement in the other subsections.” Id.
The rationale of Lamont fails when the history of the relevant statutes is examined. Since the advent of life felonies in chapter 72-724, Laws of Florida, no amendment to the recidivist statute has referenced life felonies, and prior to enactment of section 6, chapter 88-131, Laws of Florida, the penalty provisions of section 775.-084 did not include subsection (4)(e). Yet, *1226 in chapter 75-298, Laws of Florida, the legislature began directing punishment as provided in section 775.084 for life felonies. It appears that this omnibus crime bill made universal reference to section 775.084 for all felonies other than capital felonies, without consideration of the specific contents of the recidivist statute. The Lamont court having conceded that sections 775.084(4)(a) and 775.084(4)(b) do not apply to life felonies, we fail to see the logic of the legislative intent it ascribes to the 1975 enactment.
In Glover v. State, 596 So.2d 1258 (Fla. 1st DCA 1992), we noted that the argument advanced in Lamont “is not altogether lacking in appeal,” but followed our decisions in Gholston and Johnson in vacating the habitual offender sentence for a life felony. We adhere to that position in this case and vacate the habitual offender classification of the sexual battery offense.
We agree that a legislative scheme which does not subject career criminals who commit the most serious crimes to enhanced punishment under the habitual offender statute, while those who commit less serious crimes are included within its scope, does not appear rational, but we cannot justify the statutory interpretation suggested in Lamont. This is a matter to be remedied by the legislature, which makes the laws, not by the courts, which merely interpret them. We certify conflict with Lamont and we also certify the question to the Florida Supreme Court as a matter of great public importance.
Because the instant offenses occurred in 1983 and Lee chose to be sentenced under the guidelines, his habitual offender status on the other two offenses would not exempt the state from the requirement that departure be supported by a valid reason. We reject the state’s assertion that the extent of departure is not reviewable, since these offenses occurred in 1983. However, we agree that Shull and Puffinberger do not require reversal of the departure sentence under these particular circumstances, and that the unscoreable armed robbery convictions do constitute a valid reason for departure.
The convictions and sentences are AFFIRMED, except for the habitual offender classification for the sexual battery offense.
JOANOS, C.J., and ERVIN, SMITH, SHIVERS, WIGGINTON, ZEHMER, MINER, WOLF, and WEBSTER, JJ„ concur.
KAHN, J., concurs in result only.
BOOTH, J., concurs in part and dissents in part, with opinion.
ALLEN, J., did not participate.

. Shull involved resentencing after a 3.850 challenge of a departure sentence based on habitual offender status, which had been affirmed prior to Whitehead v. State, 498 So.2d 863 (Fla.1986). The supreme court ruled that "a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court.” 515 So.2d at 750.

. In these cases, the supreme court held that an unscoreable juvenile record may be used as a basis to depart from the guidelines only if the record is significant, and that in such a situation, the departure sentence can be no greater than the sentence would have been had the juvenile record been scored in calculating the guideline sentence. In both cases, the court found that the unscoreable juvenile record was not significant.

.In Barber, this court addressed the constitutionality of the statute, finding that although section 775.084(4) makes no provision for enhancing a sentence if the original offense is classified as a first degree felony punishable by life, a life felony, or a capital offense, “this is not a basis for finding that the statute fails to bear a reasonable and just relationship to a legitimate state interest." 564 So.2d at 1173.

. Burdick argued that he could not be sentenced as an habitual offender for armed burglary of a dwelling, a first degree felony punishable by a term of years not exceeding life imprisonment. This court rejected his argument, which it noted was predicated on "some dicta” in Barber, observing that "a first degree felony, no matter what the punishment imposed by the substantive law that condemns the particular criminal conduct involved, is still a first degree felony and subject to enhancement by Section 775.-084(4)(a)(l), Florida Statutes.” 584 So.2d at 1038.

. Johnson challenged his habitual offender sentence for second-degree murder which had been reclassified from a first degree felony to a life felony for use of a firearm. This court reversed the sentence, noting that "there is no provision under the habitual violent felony offender statute for enhancing the sentence of a defendant convicted of a life felony.” 568 So.2d at 520.

. Gholston challenged, inter alia, habitual offender sentences for two counts of sexual battery while armed with a deadly weapon (life felonies) and for one count of burglary while armed with a dangerous weapon (a first-degree felony punishable by life imprisonment). This court reversed the sentences, finding that section 775.084 makes no provision for enhancing penalties for first-degree felonies punishable by life, life felonies, or capital felonies, citing Johnson and Barber. The State filed a motion for rehearing or certification, arguing that the statutory provisions proscribing sexual battery with a deadly weapon and burglary while armed with a dangerous weapon permit enhancement of sentences for these offenses under the habitual offender statute. This court did not directly address the issue, but responded by noting that it had recently held in Sibley v. State, 586 So.2d 1245 (Fla. 1st DCA 1991), rev. den., 599 So.2d 658 (Fla.1992), that the habitual offender statute is inapplicable to life felonies and that in Bur-dick it had "receded from the rule announced in our original Gholston opinion” and held that first degree felonies punishable by life may be enhanced under the habitual felony offender statute. 589 So.2d at 308.

.Judge Mills wrote:
While the legislature did not directly set out how a life felony is to be enhanced in Section *1225 775.084, presumably it was their intent that it be enhanced in the same manner as a first degree felony, the highest offense covered. This of course means that if the trial court found it necessary, for the protection of the public, to sentence Watson under Section 775.084, it would have no choice but to impose a life sentence. However, in the present case, the trial judge specifically found that a life sentence was not necessary for the public’s protection, and consequently chose not to sentence Watson pursuant to the statute. No error was committed by the trial court; it was merely responding to the State’s request to make a finding of habitual offender status.
504 So.2d at 1270.